1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                        EASTERN DISTRICT OF WASHINGTON
8   JAMES BAILEY, a single man,
9            Plaintiff,                     NO.  CV-11-461-RHW
10           v.
11  CHELAN COUNTY, Municipal                **ORDER GRANTING
    Corporation, and MIKE LAMON,            DEFENDANTS' MOTION FOR
12  individually, and LEE RISDON,           SUMMARY JUDGMENT, IN
    individually,                           PART; DENYING MOTION FOR
13                                          SUMMARY JUDGMENT, IN
             Defendants.                    PART**
14

15          Before the Court is Defendants' Motion for Summary Judgment. ECF No.

16   15.  A hearing on the motion was held on September 18, 2012, in Yakima,

17   Washington.  Plaintiff was represented by Julie Anderson; Defendants were

18   represented by Mark Johnson.

19          Plaintiff is bringing § 1983 claims against Defendants Chelan County, Mike

20   Lamon, and Lee Risdon for damages resulting from battery and officer misconduct

21   for excessive use of force and county liability for officer misconduct for inadequate

22   policies, training, and/or customs. Plaintiff originally filed his complaint on

23   November 28, 2011 in the Chelan County Superior Court, and filed an Amended

24   Complaint adding Chelan County and the claim for battery on December 5, 2011.

25   Defendants filed for removal of the case to the Eastern District of Washington on

26   December 15, 2011.  Defendants now move for summary judgment.

27
28
     **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
     JUDGMENT, IN PART** ~ 1

1

STATEMENT OF FACTS

2     This case stems from an arrest that occurred in a field on Plaintiff's property,

3 in the early morning hours on November 30, 2008. The following facts are set forth

4 in the light most favorable to Plaintiff, the non-moving party.

5     Plaintiff and his neighbor were involved in a dispute over $100. On

6 November 29, 2008, Plaintiff continually called his neighbor on the telephone

7 regarding the dispute. The neighbor called the police, and the police spoke to

8 Plaintiff and told him to stop calling his neighbor. Plaintiff continued to call his

9 neighbor, who again called the police. The same officer returned to Plaintiff's

10 house and again warned him to stop calling his neighbor. The officer believed that

11 Plaintiff had been drinking.

12     After the police left, Plaintiff went to his neighbor's house and attempted to

13 contact him; the neighbor called the police again. This time, the officers arrested[1]

14 and transported him to the county jail. Plaintiff was uncooperative during the

15 transport so the officer arranged for several deputies to meet them at the

16 jail—Defendant Risdon was one of such deputies. While at the jail, Defendant

17 Risdon heard Plaintiff say something to the effect that he was going to handle Mr.

18 Karas once he got out. Plaintiff bailed out of jail and continued to telephone his

19 neighbor. The neighbor called the police again. This time, Defendants Lamon and

20 Risdon responded by going to Plaintiff's residence, at around 2 a.m. Defendants

21 phoned Plaintiff's residence and spoke with Laura Deskin, Plaintiff's girlfriend,

22 who informed them that Plaintiff was unable to speak to them. Plaintiff had seen

23 the officers and fled on foot out the back door. He ran into a field behind his house,

24 and laid on the ground in a partial hole.

25     Defendants Lamon and Risdon approached the residence and knocked on

26 the door. Ms. Deskin answered and said that Plaintiff was not there. Ms. Deskin let

27

28

_____

[1]The record does not indicate the crime for which Plaintiff was arrested.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
JUDGMENT, IN PART** ~ 2

1  the officers search the house and they confirmed that he was not there. Defendants

2  separated and began looking for Plaintiff in the field. Defendant Lamon spotted

3  Plaintiff and commanded him that he was under arrest. Plaintiff began shouting,

4  "I'm right here. I'm not going anywhere." He had his hands behind his back.

5  Defendant Lamon then shot his taser gun at Plaintiff. Plaintiff's hands went out in

6  front of him after the first taser shot. Plaintiff believes that he tried to lift up after

7  he was tased the first time. He screamed in pain, and yelled, "Stop, you're killing

8  me."

9      He was tased again. He screamed again, "Stop, you're killing me."

10  Meanwhile, Deputy Risdon arrived at the scene. Deputy Lamon told Deputy

11  Risdon to "go ahead and try it." Deputy Risdon tased him once. At some point,

12  Deputy Lamon got on Plaintiff's back and shoved his face into the ground five

13  times, breaking his teeth.[2] Plaintiff pulled his hands and arms underneath to protect

14  his face. Eventually, one of the officers pulled Plaintiff's arms behind his back and

15  placed him in handcuffs.

16      Plaintiff was unable to walk to the patrol car. Defendants called an

17  ambulance, but because they were able to extract the probes, the ambulance was

18  called off. Defendant Risdon booked Plaintiff into jail. After being secured in an

19  empty cell, a deputy working at the jail found cocaine a short distance away from

20  Plaintiff. Defendant Risdon charged Plaintiff with possession of cocaine;

21

22      [2]At his deposition, Defendant Lamon described his actions in this manner: "I

23  stood up and tased Mr. Bailey so I didn't have to continue to slam him into the

   ground.

24

25      Question: Oh, so you slammed him into the ground?

26      Answer: Three inches, four inches off the ground, I put my weight on him to

27  try to get him to loosen his grip.

28      Declar. of J. Anderson, Deposition of Deputy Lamon, ECF No. 38 at 12.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
JUDGMENT, IN PART** ~ 3

1    eventually, the charge was dismissed. Plaintiff believes the cocaine was planted.

2    Chelan County Sheriff's Department records indicate that out of all 14 tasers

3    used by the department in 2008, only one taser was utilized on the date and time in

4    question. The records indicate that, on the night in question, TASER model # X26,

5    serial # X00-254048 was deployed on November 30, 2008 at: 02:04:20 for a 5

6    second interval; 02:04:28 for a 5 second interval; and 02:04:52 for a 5 second

7    interval. According to the Department's records, Jan Brincat stated that in 2008,

8    the tasers were "pool" tasers, the deputies used paper check in and check out

9    sheets, and that such check in and check out sheets were purged in 2010.

10    According to Chelan County records, the last time Defendant Lamon was

11    trained on the use of Tasers was March 3, 2006 and the last time Defendant

12    Risdon was trained on the use of Tasers was July 30, 2007.

## MOTION STANDARD

14    Summary judgment is appropriate if the "pleadings, depositions, answers to

15    interrogatories, and admissions on file, together with the affidavits, if any, show

16    that there is no genuine issue as to any material fact and that the moving party is

17    entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. There is no genuine

18    issue for trial unless there is sufficient evidence favoring the nonmoving party for a

19    jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477

20    U.S. 242, 250 (1986). The moving party had the initial burden of showing the

21    absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

22    325 (1986). If the moving party meets it initial burden, the non-moving party must

23    go beyond the pleadings and "set forth specific facts showing that there is a

24    genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

25    In addition to showing that there are no questions of material fact, the

26    moving party must also show that it is entitled to judgment as a matter of law.

27    *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir.

28    **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY JUDGMENT, IN PART** ~ 4

2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

DISCUSSION

**I.    Defendants' Motion to Strike**

In its Reply, Defendants move to strike Plaintiff's responsive pleadings because they were untimely filed and were not formatted according to the Local Rules. Defendants also argue that Plaintiff did not timely identify his expert witnesses.

With respect to the late filings, the Court admonishes Plaintiff's counsel for not timely filing the responsive briefings and not asking the Court or opposing counsel for additional time to file her responses. Even so, the Court notes that Defendants were willing to extend the deadline to August 24, 2012.[3] The pleadings were filed on August 31, 2012. The Local Rules permit 14 days for the reply; Defendants filed their reply on September 10, 2012. The Court does not find that Defendants were prejudiced by the late filings.

Defendants argue Plaintiff failed to timely identify his expert witnesses. Plaintiff cannot call any witnesses at trial that were not properly identified pretrial as required by Fed. R. Civ. P. 26 and the Court's Scheduling Order.

//

---

[3]In a copy of an email that Ms. Anderson submitted to the Court, dated August 30, 2012, Daniel Bugbee indicated that he would "not object if your reply is late."

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY JUDGMENT, IN PART ~ 5**

**II.    Claims Against the Individual Defendants**

In his amended Complaint, Plaintiff alleged two claims against the individual Defendants: (1) excessive force; and (2) battery. In his response, Plaintiff concedes that his state law battery claim is untimely.  ECF No. 34, at 18, Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's excessive force claim.

In determining whether Defendants are entitled to qualified immunity, the Court employs a two-step process. *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). One step asks whether, taking the facts in the light most favorable to the non-moving party, the officer's conduct violated a constitutional right.  *Id.* The second step considers if a violation occurred, whether the right was "clearly established in light of the specific context of the case." *Id.* The Court may exercise its discretion in deciding which of the two steps of the qualified immunity analysis it should address first. *Id.* "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather courts 'must still slosh their way through the factbound morass of 'reasonableness.'" *Mattos*, 661 F.3d at 441 (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007).

Under Fourth Amendment excessive force claims, the court must decide whether the officer's conduct was objectively reasonably based on the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Determining whether force used in making an arrest is excessive or reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY JUDGMENT, IN PART ~ 6**

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  *Id.*

In an unpublished opinion, the Sixth Circuit conducted a qualified immunity analysis with respect to tasers and concluded that the cases addressing qualified immunity fall into two groups. *Cockrell v. City of Cincinnati*, 2012 WL 573972 (6th Cir. Feb. 23, 2012). The group of cases involve plaintiffs who were tased while actively resisting arrest by physically struggling with, threatening, or disobeying officers. *Id.* at *4. In these cases, the courts have either concluded that no constitutional violation occurred, or that the right to not be tased in this instance was not clearly established.[4]

---

[4]The Sixth Circuit identified the following cases as belonging to the first group:

*Mattos,* 661 F.3d 433 (holding, in consolidated cases, that 2004 and 2006 taser deployments constituted excessive force, but did not violate clearly established law, where one plaintiff, a pregnant woman pulled over for speeding, refused to sign citation, became agitated, screamed at officers, clung to steering wheel, and was tased three times, and other plaintiff, also a woman, was shot with taser in dart mode when her hands inadvertently pushed up against the officer who was trying to arrest her large, drunken, aggressive husband who was under arrest as a result of a domestic dispute); *McKenney v. Harrison,* 635 F.3d 354 (8th Cir. 2011) (holding that 2007 taser deployment against misdemeanant who made sudden move toward window while being questioned by police and told not to "try anything stupid" did not constitute excessive force, even though misdemeanant fell out of window to his death after being tased); *Bryan v. MacPherson,* 630 F.3d 805 (holding that 2005 taser deployment against motorist yelling angrily and acting erratically after traffic stop for failing to wear seatbelt violated Fourth Amendment, but not clearly established law); *Baird v. Ehlers,* 2011 WL 5838431 (W.D. Wash.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY JUDGMENT, IN PART ~ 7**

1    The second group of cases identified by the Sixth Circuit involved situations

2 where a law-enforcement officer tases a plaintiff who has done nothing to resist

3 arrest or is already detained.[5]  *Id.* at *5.*  Courts faced with these facts have held

4

5    _____

6 Nov.21, 2011) (holding that using taser three times on man who, in "drunken

7 stupor," was physically removed from city bus, and engaged in verbal and physical

8 confrontation with officer, may have been excessive use of force, but that law

9 regarding taser use was not clearly established as of November 2009); *Carter v.*

10 *City of Carlsbad,* 799 F.Supp. 2d 1147 (S.D. Cal.2011) (holding that use of taser

11 against large, belligerent, drunken ex-marine who "took an offensive fighting

12 stance" may have been excessive, but did not violate clearly established law on

13 October 31, 2009); *Azevedo v. City of Fresno,* 2011 WL 284637 (E.D. Cal. Jan.

14 25, 2011) (holding that use of taser against suspect detained during investigation

15 of burglary, who fled after being asked about weapons then was warned to stop,

16 may have violated Fourth Amendment, but did not violate clearly established law,

17 as of November 2007); *Sanders v. City of Dothan,* 671 F.Supp. 2d 1263 (M.D.

18 Ala. 2009) (holding that officer who tased detained, but uncooperative, suspect

19 using drive-stun mode did not violate clearly established law, as of August 2005);

20 *Beaver v. City of Federal Way,* 507 F.Supp. 2d 1137 (W.D. Wash. 2007) (holding

21 that, of five August 2004 taser deployments against suspect who fled scene of

22 residential burglary and refused to obey command to stop, first three were not

23 excessive uses of force, since officer had to make split-second decisions on how to

24 subdue disobedient, fleeing felon, while last two constituted excessive force

25 because suspect was no longer an immediate threat; qualified immunity still was

26 appropriate, however, because law was not clearly established).

27    [5]The Sixth Circuit identified the following cases as belonging to the second
group:

28 **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
JUDGMENT, IN PART** ~ 8

1  that law-enforcement officers are not entitled to qualified immunity, reasoning that

2  the right to be free from physical force when one is not resisting the police is a

3  clearly established right. *Id.*

4      Here, material questions of fact preclude the Court from ruling on qualified

5  immunity. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007)

6  _____

7      *Kijowski v. City of Niles,* 2010 WL 1378601 (6th Cir. Apr. 8, 2010); *see also*

8  *Brown v. City of Golden Valley,* 574 F.3d 491 (8th Cir. 2009) (holding that tasing

9  non-violent passenger during traffic stop for failure to hang up from 911 call

10 violated clearly established law, as of October 2005); *Landis v. Baker,* 2008 WL

11 4613547 (6th Cir. Oct. 16, 2008) (holding that repeated use of taser against

12 subdued defendant lying face-down in swamp water violated clearly established

13 law, as of November 2004); *Casey v. City of Federal Heights,* 509 F. 3d 1278 (10th

14 Cir. 2007) (holding that officers' tasing compliant, non-violent misdemeanant

15 violated clearly established law, as of August 2003); *Shekleton v. Eichenberger,*

16 2011 WL 1578421 (N.D. Iowa Apr. 26, 2011) (holding that tasing non-violent

17 misdemeanant, who did not resist arrest, struggle with, or pose a threat to, officers,

18 or attempt to flee, violated clearly established law, as of September 2008); *Borton*

19 *v. City of Dothan,* 734 F.Supp. 2d 1237 (M.D. Ala. 2010) (holding that tasing

20 mentally disturbed patient who was not under arrest three times, even though she

21 was secured to a gurney with handcuffs and restraints, was violation of clearly

22 established law, as of August 2006); *Orsak v. Metropolitan Airports Com'n*

23 *Airport Police Dept.,* 675 F.Supp. 2d 944 (D. Minn. Dec. 14, 2009) (holding that

24 officers who pulled cyclist from bike, stood him up, and shot him with taser may

25 have violated clearly established law, as of September 2006); *Asten v. City of*

26 *Boulder,* 652 F.Supp. 2d 1188 (D. Colo. 2009) (holding that "the unforewarned

27 tasing of a mentally unstable woman [who was not under arrest] in her own home"

28 violated clearly established law, as of October 2006).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY JUDGMENT, IN PART ~ 9**

1  (declining to rule on qualified immunity because of disputed facts). Where, as

2  here, there are disputed facts necessary to decide the issue of qualified immunity,

3  summary judgment is appropriate only if Defendants are entitled to qualified

4  immunity on the facts as alleged by the non-moving party. *Id.* "Because [the

5  excessive force inquiry] nearly always requires a jury to sift through disputed

6  factual contentions, and to draw inferences therefrom, we have held on many

7  occasions that summary judgment or judgment as a matter of law in excessive force

8  cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.

9  2002).

10      According to Plaintiff's version of events, he was not actively resisting

11  arrest. Rather he was lying on the ground, verbally surrendering with his hands

12  behind his back. He was then tased without any warning and Defendant Lamon

13  proceeded to slam him to the ground numerous times in order to effectuate an

14  arrest for a misdemeanor offense for which he did not have a warrant. Although the

15  record is not clear, it is reasonable to infer that there was enough light for

16  Defendant Lamon to positively identify Plaintiff on the ground and to see that

17  Plaintiff was not resisting arrest. Ms. Deskin testified that the Defendant Lamon

18  shined his flashlight on Plaintiff while Plaintiff was on the ground with his hands

19  behind his back. ECF No. 36, at 2. The record is inconclusive about whether

20  Defendant Lamon knew that Plaintiff was armed.[6] Plaintiff's evidence shows that

21

22  _____

23      [6]The record is unclear whether at the time of the arrest Defendant Lamon

24  even knew that Plaintiff had guns in his house. In their Statement of Material

25  Facts, Defendants cite to Plaintiff's deposition to support what the deputies knew

26  at the time of the arrest. Plaintiff's admission that he owns firearms does not

27  establish what Defendants knew at the time of the encounter. At oral argument,

28  when questioned by the Court, counsel did not attempt to establish any basis for

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
JUDGMENT, IN PART ~ 10**

1  over twenty seconds passed between the second and third tasings, and over 30

2  seconds from the time Lamon began shouting and the third tasing. This, along with

3  Ms. Deskins testimony, puts Defendant Lamon's testimony that he stopped tasing

4  Plaintiff when Defendant Risdon arrived into question.

5         The Court finds that a reasonable jury, if it believed Plaintiff's facts, would

6  probably find that Defendants violated Plaintiff's constitutional rights. Because it

7  was clearly established at the time of the arrest that the constitution prohibits an

8  officer from tasering and slamming a non-resisting person to the ground to

9  effectuate a warrantless arrest for a misdemeanor offense, Defendants are not

10  entitled to qualified immunity.

11         The Court denies Defendants' Motion for Summary Judgment.

12  **III.   *Monell* claims Against Chelan County**

13         Plaintiff is bringing a § 1983 *Monell* claim against Chelan County, a local

14  government, based on inadequate policies, training, and customs. ECF No. 1, at

15  20. Specifically, Plaintiff asserts that Chelan County Sheriff's Department failed to

16  adequately train Defendants Lamon and Risdon; failed to require that each deputy

17  re-certify annually as a condition for issuance and retention of a Taser, and failed

18  to establish a record retention policy. *Id.*

19         **A.   Statute of Limitations**

20         Plaintiff's *Monell* liability claims against Chelan County are time-barred.

21  State law governs the statute of limitations for section 1983 actions as well as

22  questions regarding the tolling of such limitations periods. *Wilson v. Garcia*, 471

23  U.S. 261, 269 (1985). The statute of limitations for a § 1983 claim is three years.

24  *See Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir.1991)

25  (explaining that the statute of limitations for a § 1983 action filed in Washington

26  "is the three-year limitation of Wash. Rev.Code § 4.16.080(2)").

27  _____

28  Defendants' prior knowledge of Plaintiff's gun ownership.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
JUDGMENT, IN PART ~ 11**

1    Plaintiff argues that Wash. Rev. Code 4.96.020(4) tolls the statute of

2  limitations for the period following his filing a notice of claim with the County.

3  The Court disagrees. Washington courts have consistently held that section

4  4.96.020(4) has no application to § 1983 claims, because this statute does not

5  require a party to file a notice of claim for § 1983 claims. *Wright v. Terrell*, 162

6  Wash. 2d. 192, 196 (2007); *Southwick v. Seattle Police Officer John Doe*, 145

7  Wash. App. 292, 301 (2008).

8    Because Plaintiff filed his amended complaint asserting a *Monell* claim

9  against Defendant Chelan County on December 11, 2011, this claim is time-barred,

10  and summary judgment in favor of Chelan County is appropriate.

11    **B.  *Monell* Liability**

12    In the alternative, Plaintiff's *Monell* claim fails as a matter of law. A local

13  government is a "person" within the meaning of section 1983, but it cannot be

14  held liable merely because it employed a tortfeasor.  *Monell v. New York City Dept.*

15  *of Social Servs.*, 436 U.S. 658, 689 (1978).  Rather, liability must be based on an

16  "action pursuant to official municipal policy" that caused the constitutional

17  violation.  *Id.* A municipal's failure to train its employees can be an

18  unconstitutional "policy" for purposes of § 1983 liability. *City of Canton, Ohio, v.*

19  *Harris*, 489 U.S. 378, 387 (1989). To be actionable under § 1983, the failure to

20  train or supervise must amount to "'deliberate indifference to the rights of persons'

21  with whom those employees are likely to come into contact." *Lee v. City of Los*

22  *Angeles*, 250 F.3d 668, 681 (9th Cir.2001) (*quoting Canton*, 489 U.S. at 388-89).

23    In order to prevail on an inadequate training claim, Plaintiff must show: (1)

24  the existing training program is inadequate; (2) deliberate indifference on the part

25  of the municipality where "the need for more or different training is so obvious,

26  and the inadequacy so likely to result in the violation of constitutional rights, that

27  the policymakers of the [county] can reasonably be said to have been deliberately

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
JUDGMENT, IN PART ~ 12**

indifferent to the need"; and (3) the inadequate training "actually caused" a deprivation of Plaintiff's constitutional rights. *Merritt v. Cnty of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "Without notice that a course of training is deficient in a particular aspect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2010). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* Local governments may be liable for a single incident if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

Here, Plaintiff's claim for municipal liability fails as a matter of law. He has not established that the County of Chelan's policies constitute a deliberate indifference to his constitutional rights or that the training received by Defendants was inadequate. He has not demonstrated a pattern of similar constitutional violations. Additionally, he has not provided any case law support or demonstrated that it is a constitutional violation to not retain records past a certain number of years, nor has he provided any case law or demonstrated that it is a constitutional violation to not re-certify deputies annually. As such, summary judgment in favor of Chelan County is appropriate for this reason, as well.

///
///
///
///
///
///

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY JUDGMENT, IN PART ~ 13**

1    Accordingly, **IT IS HEREBY ORDERED**:

2    1.    Defendants' Motion for Summary Judgment, ECF No. 15, is

3  **GRANTED,** in part; and **DENIED,** in part.

4    **IT IS SO ORDERED.**  The District Court Executive is directed to enter

5  this Order and provide copies to counsel.

6    **DATED** this 5th day of October, 2012.

7

8                    *s/Robert H. Whaley*
                   ROBERT H. WHALEY
9                   United States District Court

10

11  Q:\RHW\aCIVIL\2011\Bailey\sj3.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT, IN PART; DENYING MOTION FOR SUMMARY
    JUDGMENT, IN PART** ~ 14